UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

IN THE MATTER OF THE
EXTRADITION OF MONIKA KAPOOR           MEMORANDUM
                                                                           AND ORDER
                                                                           11-M-456 (RML)

----------------------------------------------------------X

LEVY, United States Magistrate Judge:

        The United States of America (the "government"), acting on behalf of the government of India, filed a complaint on May 2, 2011, seeking an arrest warrant and the extradition of Monika Kapoor ("Kapoor" or the "relator"), pursuant to 18 U.S.C. § 3184. Kapoor has moved for release on bond until final resolution of the extradition proceedings. I held oral argument on May 26, 2011 and have carefully considered the parties' submissions. For the reasons stated below, the motion is granted.

## BACKGROUND AND FACTS

        On April 26, 2010, the Court of the Metropolitan Magistrate in New Delhi, India, issued a warrant for the arrest of Kapoor, an Indian citizen. (Motion for Bond, dated May 17, 2011 ("Bond Mot."), at 2.) The warrant alleges that in 1998, Kapoor, along with her two brothers, Rajan and Rajiv Khanna, used forged export documents to obtain sixteen Replenishment Licences from the Indian foreign trade authorities. (Complaint, dated May 2, 2011 ("Compl."), ¶ 5(b).) According to the allegations, they subsequently sold at least fourteen of the licenses to another company, which used them to import duty-free gold, causing a loss to the Indian government of approximately $679,000. (Id.) Kapoor stands accused of (1) conspiracy, (2) cheating and dishonestly inducing delivery of property, (3) forgery of valuable security, will, etc., (4) forgery for the purpose of cheating, and (5) using as genuine a forged

document, in violation of the Indian Penal Code. (Id. ¶ 4.)

The Directorate of Revenue Intelligence (the "Directorate") appears to have begun investigating Kapoor and her brothers in the fall of 1999. On September 28, 1999, Kapoor was interviewed in conjunction with the Directorate's investigation. (Proposal for Extradition, certified Oct. 12, 2010 ("Proposal for Extradition"), at P256[1] (Show Cause Notice, dated Feb. 11, 2003, ¶ 6).) In 2002, the Directorate submitted a written complaint to the Central Bureau of Investigation. (Id. at P27 (Affidavit of Ravi Kant, dated May 19, 2010 ("Kant Aff."), ¶ 2).) On January 10, 2003, the Metropolitan Magistrate's Court in New Delhi issued an arrest warrant (id. at P386 (Red Corner Notice, dated Jan. 28, 2003)), and a charge sheet (Police Report) was filed in the same court on March 31, 2004. (Id. at P39 ("Kant Aff. ¶ 7).) On February 13, 2006, the Metropolitan Magistrate's Court declared Kapoor a "Proclaimed Offender" because she did not take part in either an investigation or trial. (Id. at P39–40 (Kant Aff. ¶ 8).)

Kapoor entered the United States on October 16, 1999, shortly after the investigation against her commenced. (Bond Mot. at 1.) Since her arrival, she has resided in Queens, New York, with her husband, two children, and elderly father. (Id. at 1, 3.) On January 6, 2010, agents of Immigration and Customs Enforcement took Kapoor into custody for overstaying her visa.[2] (Id. at 1.) Approximately seventy days later, she was released from immigration custody on a $22,500 bond. (Id.)

---

[1] The parties have submitted multiple copies of the Proposal for Extradition, the papers that the Indian government presented to the United States in support of its extradition request. All page numbers in this opinion reference the "P" stamped copy that Kapoor submitted on May 27, 2011.

[2] She entered the country on a valid B1 visa (Bond Mot. at 1), but her visa expired on April 15, 2000. (Id. at 1, Ex. A at 1.)

After Kapoor's release from immigration custody, the Court of the Metropolitan Magistrate issued a second warrant for her arrest and on October 29, 2010, the Government of India requested her extradition. (Id. at 2.) On March 30, 2011, the State Department granted the request. (Id.) This court issued an arrest warrant on May 2, 2011, pursuant to 18 U.S.C. § 3184, the federal legislation implementing extradition treaties. Kapoor was arrested on May 6, 2011 and arraigned on May 10, 2011.

Kapoor denies the charges and claims that she left India to escape government-inflicted "persecution, harassment, and torture" related to the "false accusation" that she was involved in a fraudulent business matter. (Id., Ex. A at 13.) In February 2010, while in immigration custody, Kapoor filed an application for Asylum and Withholding From Removal on the basis of the Convention Against Torture ("CAT"), as well as her religion, nationality, political opinion, and membership in a particular social group.[3] (Id., Ex. A at 5.) The final hearing on Kapoor's application is scheduled for September 30, 2011. (Id. at 1.)

Kapoor also awaits a hearing before this court to determine whether extradition is proper. She presently moves for release on bail pending extradition. She argues that there are special circumstances in her case to overcome the presumption against bail in extradition cases and that she is not a flight risk or danger to the community.

**DISCUSSION**

The "standard for release on bail for persons involved in extradition proceedings

---

[3] In her asylum application, Kapoor stated that she believes if she is removed to India, she "will be arrested, traumatized, persecuted and tortured by police and government officials . . . ." (Bond Mot., Ex. A at 13.)

is a more demanding standard than that for ordinary accused criminals awaiting trial." Hu Yau–Leung v. Soscia, 649 F.2d 914, 920 (2d Cir. 1981) (citing Wright v. Henkel, 190 U.S. 40, 62 (1903); Beaulieu v. Hartigan, 554 F.2d 1 (1st Cir. 1977)). "Unlike the situation for domestic crimes, there is no presumption favoring bail. The reverse is rather the case." Beaulieu v. Hartigan, 554 F.2d at 2. The court may grant bail only where "special circumstances" exist, and the party seeking release on bail has the burden of showing that such circumstances are present. See Salerno v. United States, 878 F.2d 317, 317 (9th Cir. 1989); see also Duca v. United States, No. CV–95–713, 1995 WL 428636, at *15 (E.D.N.Y. July 7, 2005) ("Under the special circumstances standard, admission to bail should be an unusual and extraordinary thing, and courts should exercise the power sparingly." (internal citations and punctuation omitted)). In addition, she must show that she is "neither a risk of flight nor a danger to the community." United States v. Ramnath, 533 F. Supp. 2d 662, 665 (E.D. Tex. 2008). I will discuss each of these elements as it applies to this action in turn.

      A. Special Circumstances

The trial judge has discretion to decide what constitutes special circumstances, and the "list of potential 'special circumstances' is not limited to those previously recognized in published decisions[,]" as such decisions are merely instructive. In re Extradition of Gonzalez, 52 F. Supp. 2d 725, 736 (W.D. La. 1999) (citing Beaulieu, 554 F.2d at 1). However, it is worth noting that courts have held that special circumstances present where the relator has:

> (1) raised substantial claims which have a high probability of success on the merits; (2) suffered a serious deterioration of health; (3) shown that there is an unusual delay in the appeals process; (4) shown that the extradition proceeding will be unusually long and complex; (5) shown that the requesting country would grant bail in

a comparable extradition case; and (6) shown by clear and
convincing evidence that bail is available for the substantive
offense in the requesting country.

Duca, 1995 WL 428636, at *15 (citing In re Extradition of Nacif–Borge, 829 F. Supp. 1210, 1216–19 (D. Nev. 1993)). In addition, "[r]elated to the issue of delay in extradition proceedings, courts have found special circumstances when 'there is a lack of any diplomatic necessity for denying bail.'" United States v. Castaneda-Castillo, 739 F. Supp. 2d 49, 56 (D. Mass. 2010) (citing In re Extradition of Chapman, 459 F. Supp. 2d 1024, 1027 (D. Haw. 2006)). In this case, Kapoor argues that a number of factors collectively constitute special circumstances, including lack of diplomatic necessity, the anticipated length of extradition proceedings and appeals, and her high likelihood of success on the merits. I will address each factor in turn.

1. Lack of Diplomatic Necessity for Detention

The most compelling argument in favor of release is the Indian government's "significant delay" in bringing its request for extradition. (Transcript of Oral Argument, dated May 26, 2011 ("Tr."), at 5.) The records submitted with the extradition request indicate that the Indian government has had reason to believe that Kapoor was living in Queens, New York, since at least 2002, if not earlier.[4] In addition, the original warrant for Kapoor's arrest was issued in

---

[4] In a June 24, 2002 letter to the Superintendent of Police, Central Bureau of Investigation, the Directorate reports that the agency had discovered that Kapoor was staying with her father in Queens, New York. (Proposal for Extradition at P45 (Letter to Shri Mittal, dated June 24, 2002, at 2).) Moreover, it is possible that the government and/or police believed her to be residing in New York well before 2002. A show cause notice dated February 11, 2003 states that Kapoor's husband, Atul Kapoor, told Directorate officers that he had heard from Kapoor that she was in the United States. (Id. at P266 (Show Cause Notice, dated Feb. 11, 2003, ¶ 12).) There is no indication of when the statement was made, but presumably it was in late 1999 or early 2000 because, according to Kapoor, her husband has not left the United States since February 2000. (Bond Mot., Ex. A at 14.)

2003.  Unlike in In re Extradition of Garcia, 615 F. Supp. 2d 162, 172 (S.D.N.Y. 2009), in which the court failed to find a lack of diplomatic necessity because numerous hearings had been ongoing in the Philippines, there is no indication in the record of any legal proceedings occurring in India between 2006 and 2010.  This long delay signals that the Indian government has "not made prosecution of this offense a priority."  Chapman, 459 F. Supp. 2d at 1027.  In Chapman, the court found special circumstances and granted bail in part because Mexico had waited three years after an incident and arrest before bringing extradition proceedings, displaying a "lack of any diplomatic necessity for denying bail."  Id.  In this case, the delay is even more glaring.

       Related to the issue of diplomatic necessity is the possibility of release in India in the event Kapoor is extradited.  Kapoor argues that a special circumstance exists because bail would be available to her in India.  (Bond Mot. at 6.)  She attaches documentation showing that both of her brothers, who are her alleged co-conspirators, have been released on bail in India since 2003.  (See id., Ex. B; Affidavit of Rajeev Khanna, dated May 17, 2011.)  One court has held that the availability of bail in the requesting country constitutes a special circumstance.  Nacif-Borge, 829 F. Supp. at 1221.  However, as the government points out, an overwhelming number of courts have declined to follow this holding.  See, e.g., In re Extradition of Siegmund, 887 F. Supp. 1383, 1386 (D. Nev. 1993) (rejecting the holding in Nacif-Borge and concluding that the availability of bail in the requesting country is not a special circumstance); Garcia, 615 F. Supp. 2d at 172 (same).  Similarly, there is no guarantee that India would grant Kapoor bail.  Nevertheless, the possibility of bail in India on the underlying substantive offenses "may properly be considered in combination with other factors[,]" Castaneda-Castillo, 739 F. Supp. 2d at 59, and it contributes to the court's finding that there is a lack of diplomatic necessity for denying

bail.[5]

   2. Future Delays

Kapoor argues that the complex issues she intends to raise during the extradition proceedings (including a lack of probable cause and the barring of the extradition because of CAT[6]) will result in an inevitability long extradition process. (Bond Mot. at 5.) Moreover, Kapoor has said that if extradition is ordered, she will exhaust all possible appeals, including filing habeas petitions and requesting relief from the State Department. (Id.) Several courts have recognized that a delay in the process of obtaining an extradition hearing can be a "special circumstance" that will justify bail. See, e.g., Salerno, 878 F.2d at 317 (citations omitted); United States v. Kin-Hong, 83 F.3d 523, 524 (1st Cir. 1996). Courts have also recognized the projected length of extradition proceedings as a special circumstance. See, e.g,, United States v. Taitz, 130 F.R.D. 442, 445–46 (S.D. Cal. 1990) (focusing on the fact that the court had to consider evidence to determine whether probable cause existed for each of 434 fraud counts); see also In re Extradition of Santos, 473 F. Supp. 2d 1030, 1036–38 (C.D. Cal. 2006). The government argues that Kapoor should not benefit from the anticipated delays because they would stem from her decision to prolong the proceedings. (Opposition to Motion for Bond,

---

   [5] It must also be noted that in considering the United States's diplomatic obligations, this court must take cognizance not only of this country's extradition treaty with India but also of CAT. As a signatory of CAT, the United States also has a diplomatic interest in allowing Kapoor to fully exhaust her claims under that treaty.

   [6] Article III of CAT dictates that "[n]o State party shall expel, return ('refouler') or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, art. 3, Dec. 10, 1984, 1465 U.N.T.S. 85; 22 C.F.R. § 2242(a).

dated May 24, 2011("Opp'n Mem."), at 4 (citing In re Extradition Rovelli, 977 F. Supp. 566, 569 (D. Conn. 1997)).) "While this argument may be persuasive in cases where the defendant has just stalled for time, that is not the case here." Castaneda-Castillo, 739 F. Supp. 2d at 59. Instead, Kapoor has posited complex and weighty arguments as to why she is not extraditable. As a result, combined with the lack of diplomatic necessity present in Kapoor's case, these potential delays support a finding of special circumstances.

### 3. Likelihood of Success on the Merits

Kapoor also argues that there is a high likelihood that she will prevail in blocking her extradition. She contends that the Indian Government will not be able to make out probable cause against her and that CAT will prevent removal. (Bond Mot. at 4.) While multiple courts have recognized that special circumstances may exist where the relator raises substantial claims showing a high probability of success on the merits, see, e.g., Salerno, 878 F.2d at 317, and Kapoor has raised potentially meritorious defenses, I agree with the government that it would be premature to conclude that she has established a likelihood of success on the merits. "The factual record will be further developed at the extradition hearing and it is premature for this court to consider the merits of [the relator's] claims." Kin-Hong, 83 F.3d at 525; see also Castaneda-Castillo, 739 F. Supp. 2d at 62 ("Any evaluation as to whether the Government will meet the probable cause standard is pure speculation." (citing Kin-Hong, 83 F.3d at 525)). Moreover, the court has no factual record concerning Kapoor's claims that it is more likely than not that she would be tortured if removed to India. Therefore, I am unable to find that Kapoor's purported defenses rise to the level of a special circumstance warranting the granting of bail.

Nonetheless, I find that the other factors that Kapoor has presented—a lack of

diplomatic necessity and the anticipated length of these proceedings—collectively constitute special circumstances.

B. Risk of Flight/Danger to the Community

As stated above, in addition to showing that a special circumstance exists, a party seeking release on bond in an extradition case needs to demonstrate that he or she is not a risk of flight or a danger to the community. The government does not contend that Kapoor would be a danger to the community but argues that she represents a flight risk. (Opp'n Mem. at 6.)

Kapoor has lived in Queens for over a decade and has significant ties to New York City. Her husband, two children (one of whom is still a minor), and elderly father[7] all live here. In addition, failure to appear would seriously affect Kapoor's efforts to gain asylum or withholding from removal. She has already surrendered her passport to Pretrial Services and she has agreed to stringent conditions of release, as detailed below. Under these conditions—which the government agreed were sufficient assuming Kapoor were to be released[8]—I find that Kapoor does not represents a risk of flight.

## CONCLUSION

Kapoor has demonstrated a confluence of factors, including a lack of diplomatic necessity and anticipated lengthy proceedings and appeals, that collectively constitute special

---

[7] It is worth noting that Kapoor is the primary caregiver of her father, who has significant health issues. (Bond Mot. at 3, Ex. C.) While Kapoor concedes that most courts do not consider the health of relatives as a special circumstance, she encourages the court to consider her care of her father in making its decision. (Tr. at 11.) The court notes that this fact strengthens her roots in the community and lessens her risk of flight.

[8] Although the government opposes Kapoor's release on bond, the parties agreed upon the terms and conditions of a hypothetical bond, in the event Kapoor were released. (Tr. at 42–45.)

circumstances, undercut the presumption against bail, and weigh in favor of her release. In addition, any risk of flight can be satisfactorily mitigated by the conditions of release set forth below. Accordingly, Kapoor's motion for release on bond is granted, provided that she complies with the following conditions:

(1) home detention with electronic monitoring;
(2) regular reporting to Pretrial Services;
(3) travel restricted to New York City without the prior permission of the Court;
(4) random home visits by Pretrial Services.

The unsecured bond is set in the amount of $100,000, with Atul Kapoor, Saranjeet Sethi, Nishmu Narula, and Vijay Narula acting as suretors.

SO ORDERED.

Dated: Brooklyn, New York
June 6, 2011

/s/
ROBERT M. LEVY
United States Magistrate Judge