UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

IN THE MATTER OF THE                               MEMORANDUM
EXTRADITION OF MONIKA KAPOOR                       AND ORDER
                                                   11-M-456 (RML)
-------------------------------------------------------X

LEVY, United States Magistrate Judge:

       The United States of America (the "government"), acting on behalf of the government of India, filed a complaint on May 2, 2011, seeking an arrest warrant and the extradition of Monika Kapoor ("Kapoor"), pursuant to 18 U.S.C. § 3184. I held a hearing regarding the requested extradition on July 28, 2011 (see Transcript of Extradition Hearing, dated July 28, 2011 ("Tr.")) and have carefully considered the parties' submissions. For the reasons stated below, the government's request for a certificate of extraditability for Kapoor is granted.

### BACKGROUND AND FACTS

       On April 26, 2010, the Court of the Metropolitan Magistrate in New Delhi, India, issued a warrant for the arrest of Kapoor, an Indian citizen. The government, acting on behalf of the Indian government, filed a complaint in this court on May 2, 2011, seeking an arrest warrant and Kapoor's extradition. The Honorable Joan M. Azrack, United States Magistrate Judge, issued an arrest warrant on May 2, 2011, pursuant to 18 U.S.C. § 3184, the federal legislation implementing extradition treaties. Kapoor was arrested on May 6, 2011 and arraigned on May 10, 2011. On June 8, 2011, I granted Kapoor bail pending the resolution of these extradition proceedings.

       India's basic allegation is that Kapoor and her brothers, Rajan and Rajiv Khanna, defrauded the Indian government of approximately $679,000. The complaint alleges that in 1998, Kapoor, along with her brothers, used forged export documents to obtain sixteen

Replenishment Licences[1] from the Indian foreign trade authorities. (Complaint, dated May 2, 2011 ("Compl."), ¶ 5(b).) According to the allegations, they subsequently sold at least fourteen of the licenses to another company (Deep Blue Imports), which used them to import duty-free gold, causing a loss to the Indian government of approximately $679,000. (Id.) Kapoor is alleged to have taken part in the fraudulent scheme by: being the proprietor of the company (Monika Overseas) that submitted the application for six of the Replenishment Licenses; signing the application for the licenses, as well as forged documents enclosed with it; receiving the licenses at her residence; and facilitating the transmission of the licenses to Deep Blue Imports. (See Proposal for Extradition, certified Oct. 12, 2010 ("Extradition Packet"), at P38–39.)[2] She stands accused of (1) cheating and dishonestly inducing delivery of property, (2) forgery of valuable security, will, etc., (3) forgery for the purpose of cheating, (4) using as genuine a forged document, and (5) criminal conspiracy in violation of the Indian Penal Code. (Compl. ¶ 4.)

The government currently seeks certification of Kapoor's extraditability. Kapoor argues that the court should not issue the certificate because there is not probable cause to sustain the charges against her.

## DISCUSSION

---

[1] Under the Export/Import Policy 1997–2002, the Indian government permitted companies that exported gold to replenish their gold supply using government-approved Replenishment Licenses. (Memorandum of Law in Support of Application for Extradition, dated July 21, 2011, at 3.) The licences allowed those companies to import into India, duty free, an amount of gold commensurate with the amount of gold that had been exported. (Id.)

[2] The parties have submitted multiple copies of the Extradition Packet, the exhibits that the Indian government presented to the United States in support of its extradition request. All page numbers in this opinion reference the "P" stamped copy that Kapoor submitted on May 27, 2011.

A. Requirements for Extradition

Under the federal extradition statute, a court may issue a certificate of extraditability for a fugitive if it "deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention . . . ." 18 U.S.C. § 3184. If the reviewing judge "determines that the evidence is sufficient 'to sustain the charge under the provisions of the proper treaty or convention,' he is instructed to issue a certificate of extraditability to the Secretary of State, who has final and discretionary authority to extradite the fugitive." Skaftourous v. United States, 667 F.3d 144, 154 (2d Cir. 2011) (quoting 18 U.S.C. § 3184 and citing Lo Duca v. United States, 93 F.3d 1100, 1103–04 (2d Cir. 1996)).

At an extradition hearing, the "judicial officer's inquiry is confined to the following: whether a valid treaty exists; whether the crime charged is covered by the relevant treaty; and whether the evidence marshaled in support of the complaint for extradition is sufficient under the applicable standard of proof." Cheung v. United States, 213 F.3d 82, 88 (2d Cir. 2000) (citations omitted); see also In re Szepietowski, No. M 08-971, 2009 WL 187568, at *4 (E.D.N.Y. Jan. 23, 2009) (citations omitted). In this case, Kapoor concedes that the first two prongs of the test have been met but she argues that the Indian government has not produced enough evidence to establish probable cause.

B. Kapoor's Proposed Evidence

As a threshold matter, Kapoor would like to introduce two pieces of evidence in order to challenge the existence of probable cause: (1) an affidavit in which she avers that statements she made to the Indian government were coerced; and (2) an expert report on her handwriting. The government objects to the court's review of either document in conjunction

with its probable cause analysis.

It is settled law that a relator's right to controvert the evidence introduced against him or her is "limited to testimony which explains rather than contradicts the demanding country's proof." Shapiro v. Ferrandina, 478 F.2d 894, 905 (2d Cir. 1973) (citations omitted); see also Hooker v. Klein, 573 F.2d 1360, 1368 (9th Cir. 1978) ("Participation by the fugitive at the extradition proceeding is limited; he is not permitted to introduce evidence on the issue of guilt or innocence but can only offer evidence that tends to explain the government's case of probable cause." (citation omitted)). Explanatory evidence includes "reasonably clear-cut proof which would be of limited scope and have some reasonable chance of negating a showing of probable cause." In re Extradition of Sindona, 450 F. Supp. 672, 685 (S.D.N.Y. 1978); see also Shapiro, 478 F.2d at 905 (holding that an extraditee may only introduce evidence that explains or obliterates, rather than contradicts, the government's proof). "The extent of such explanatory evidence to be received is largely in the discretion of the judge ruling on the extradition request." Sindona, 450 F. Supp. at 685 (citations omitted). "Evidence which raises questions of credibility 'should properly await trial.'" United States v. Hunte, No. 04-M-0721, 2006 WL 20773, at *6 (E.D.N.Y. Jan. 4, 2006) (quoting Shapiro, 478 F.2d at 905, and citing Sindona, 450 F. Supp. at 687). With these standards in mind, I will address the propriety of admitting each piece of proposed evidence in turn.

1. The Export Report on Handwriting

Several of the documents that Monika Overseas submitted as part of its application for the Replenishment Licenses appear to have been signed by Kapoor. Kapoor argues that the court should consider a piece of evidence—a 2004 supplemental opinion of the

Office of the Government Examiner of Questioned Documents (the "GEQD") (the "Supplemental Opinion")—that concludes that it is not Kapoor's signature on several of these documents. India did not provide the Supplemental Opinion as part of its extradition packet[3] but instead included an earlier report of the GEQD; that report states that the GEQD could express no opinion regarding Kapoor's signatures on the documents in question. (See Extradition Packet P254–55.) Although Kapoor concedes that the Supplementary Opinion "disagrees" with an identification of Kapoor's signature made in a statement by V.K. Mohan Das,[4] a bank official, she argues that it should be considered because "Mohan Das provides no information with respect to his ability to differentiate a genuine signature from a forgery . . . ." (Motion to Dismiss MJ Complaint for Extradition, dated June 27, 2011 ("Kapoor Mem."), at 7; see also Tr. at 9–12.)

        Although the line between the categories of contradictory and explanatory material is admittedly nebulous, the Supplemental Opinion falls squarely in the category of contradictory rather than explanatory material.[5] The fact that Mohan Das's statement contains no information

---

[3] Kapoor avers thats the Indian government provided Rajan and Rajiv Khanna with this document and that they forwarded it to Kapoor. (Motion to Dismiss MJ Complaint for Extradition, dated June 27, 2011 ("Kapoor Mem."), at 4–5.)

[4] Mohan Das is also referred to as "Mohandas" in various documents within the extradition packet.

[5] At oral argument, Kapoor seemed to suggest that it is inappropriate to apply the contradictory-explanatory distinction because the Supplemental Opinion was generated by the Indian government itself. (See Tr. at 26–27.) However, Santu v. Burke, No. 97 Civ. 4608, 2000 WL 191707 (S.D.N.Y. Feb. 10, 2010), the case that Kapoor cites in support of deviating from this traditional distinction, does not provide a basis for doing so. In Santu, a habeas court remanded the case to the extraditing court to consider newly-discovered court testimony from an eyewitness whose affidavit was in the extradition packet. However, the court did not base its decision on the fact that the witness recanted his statement in an Indian court but rather on the fact that his subsequent recanting testimony would obliterate probable cause. See Santu, 2000
(continued...)

concerning his qualifications to identify handwriting is certainly a factor for the court to consider in determining how much weight to give to his authentication of Kapoor's signature, but it provides no support for the argument that the Supplemental Opinion should be admitted. Moreover, Kapoor herself admits that the Supplementary Opinion "disagrees" with Mohan Das's statement.[6]  (Kapoor Mem. at 7.)  As a result, it would be inappropriate for the court to consider the Supplemental Opinion in deciding whether there is probable cause.

2. Kapoor's Affidavit

Kapoor also asks the court to consider an affidavit in which she recants a statement she gave to the Indian government in 1999 and claims that she gave it under duress. "Courts are divided over whether recantation evidence is properly received in an extradition proceeding."  Hunte, 2006 WL 20773, at *7; see also United States v. Pena-Bencosme, No. 05-M-1518, 2007 WL 3231978, at *5 (E.D.N.Y. Oct. 30, 2007).  "A number of courts have admitted recantations with sufficient indicia of reliability, such as a recantation made during the course of a court proceeding or made against the interests of the individual recanting, where the recantations obliterate probable cause."  Hunte, 2006 WL 20773, at *7 (collecting cases); cf. Pena-Bencosme, 2007 WL 3231978, at *5 ("Where a recantation is received, it is only because it bears strong indicia of reliability, such as a recantation made during the course of a court

---

[5](...continued)
WL 191707, at *16.  That is not the case here.

[6] Kapoor also argues that the failure to include the Supplementary Opinion in the extradition request "calls into question the credibility of the extradition request itself."  (Kapoor Mem. at 7; see also Tr. at 17–18.)  She states that the inclusion of Mohan Das's affidavit and exclusion of the Supplementary Opinion "appears to be an effort to mislead the United States and the Court . . . ."  (Kapoor Mem. at 7.)  However, there is no evidence from which to conclude that the omission was deliberate and Kapoor cites no case law in support of this proposition.

proceeding or made against the interests of the individual recanting, and obliterates probable cause." (collecting cases)). "However, courts have been reluctant to consider recantation evidence where the credibility of the witness's recantation cannot be determined without a trial." Hunte, 2006 WL 20773, at *8 (collecting cases and refusing to consider recantation evidence in that case).

In this case, it would be inappropriate for the court to consider Kapoor's affidavit for three distinct reasons. First, her affidavit would not completely obliterate probable cause as it is not the only evidence against her. Second, the affidavit has absolutely no indicia of reliability, as it was made in, rather than against, Kapoor's interest.[7] Third, as the government persuasively argues, "the facts that Kapoor seeks to recant—her receipt of payments from her brother and her signature of blank company letter—are precisely the type of issues that can be addressed at trial." (Memorandum of Law in Support of Application for Extradition, dated July 20, 2011 ("Gov't Mem."), at 34.) Therefore, the court will not consider Kapoor's affidavit.

C. Standard for Probable Cause

To establish probable cause in an extradition proceeding, the government is not required to present evidence sufficient to justify a conviction. An extradition hearing is narrow in scope and should not be converted into a "dress rehearsal trial." Jhirad v. Ferrandina, 536 F.2d 478, 484 (2d Cir. 1976) (citation omitted). The limited purpose of an extradition hearing is to determine whether the requesting country has presented sufficient evidence to justify holding the

---

[7] On the other hand, "as an admission, and thus a well-established hearsay exception, [the original] statement [that Kapoor now wishes to recant] is reliable." In re Extradition of Skaftouros, 643 F. Supp. 2d 535, 550 (S.D.N.Y. 2009) (citing Fed. R. Evid. 801(d)(2); United States v. Kin-Hong, 110 F.3d 103, 121 (1st Cir. 1997); United States v. Saget, 377 F.3d 223, 230 (2d Cir. 2004)).

extraditee to answer the charges pending against him or her, and is not to determine whether the extraditee is guilty of those charges. See Charlton v. Kelly, 229 U.S. 447, 460–61 (1913); see also Melia v. United States, 667 F.2d 300, 302 (2d Cir. 1981).

Probable cause in extradition proceedings is determined by the same standards used in federal preliminary hearings. See In re Extradition of Glantz, No. 94 Cr. Misc. 1 p. 25, 1995 WL 495644, at *2 (S.D.N.Y. Aug. 21, 1995). The request for extradition is to be granted if the evidence presented "would support a reasonable belief that [the extraditee] was guilty of the crime[s] charged . . . ." Ahmad v. Wigan, 910 F.2d 1063, 1066 (2d Cir. 1990) (citing Fernandez v. Phillips, 268 U.S. 311, 312 (1925)); see also Lo Doca v. United States, No. CV–95–713, 1995 WL 428636, at *12 (E.D.N.Y. July 07, 1995) ("A finding of probable cause to extradite merely requires evidence 'sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt [.]' . . ." (quoting In Re Extradition of Atta, 706 F. Supp. 1032, 1050 (E.D.N.Y. 1989)).

While the evidence in support of extradition must be "competent and adequate," Bingham v. Bradley, 241 U.S. 511, 517 (1916) (citation omitted), "[t]he rules of evidence that govern at trial are not applicable in extradition proceedings[,]" In re Extradition of Blakeney, No. 10-MJ-635, 2010 WL 4457778, at *3 (E.D.N.Y. Nov. 1, 2010). Accordingly, hearsay evidence is admissible, see United States v. Mulligan, 50 F.2d 687, 688 (2d Cir. 1931), and the court may even rely on "unsworn statements of absent witnesses," Collins v. Loisel, 259 U.S. 309, 317 (1922); see also Simmons v. Braun, 627 F.2d 635, 636 (2d Cir. 1980). Of course, "the hearsay character of a statement is . . . a factor in determining" its weight. Mulligan, 50 F.2d at 688. Ultimately, "a court must conduct an independent assessment of the evidence and closely

examine the requesting country's submissions to ensure that any hearsay bears sufficient indicia of reliability to establish probable cause." Pena-Bencosme,, 2006 WL 3290361, at *2 (citing Gill v. Imundi, 747 F. Supp. 1028, 1041 (S.D.N.Y. 1990)). The "credibility of the witnesses and the weight to be accorded their testimony is solely within the province of the extraditing magistrate." Austin v. Healy, 5 F.3d 598, 605 (2d Cir. 1993) (cittation omitted); see also Gill, 747 F. Supp. at 1041 (recognizing that an extradition court has the "authority and discretion to go beyond the face of the government's affidavits for purposes of determining credibility or reliability").

D. The Evidence Against Kapoor

The government highlights the following evidence as implicating Kapoor in a fraudulent scheme:

- In a written statement dated September 28, 1999, Kapoor admitted to establishing Monika Overseas, giving Rajiv Khanna power of attorney and a letter of authority, giving her brother sheets of Monika Overseas letterhead with her signature that were otherwise blank, and getting between 8,000 and 10,000 rupees per month "as consideration."[8]

---

[8] Kapoor argues that her entire statement should be disregarded because it was made under torture. (See Kapoor Mem. at 8.) For this proposition, she cites Cornejo-Barreto v. Seifert, 218 F.3d 1004, 1008 (9th Cir. 2000). In that case, the extraditee presented extensive evidence (including photos taken after his arrest and the testimony of experts) that he had been severely tortured upon arrest in Mexico. According to the Ninth Circuit, to "isolate any possible taint the alleged torture could have on the evidence supporting the probable cause determination, the judge considered the sufficiency of the evidence without the challenged confessions." Id. However, the Ninth Circuit took no position on whether the judge's decision to exclude the evidence was required or even warranted. While, as explained above, courts have admitted recanting testimony under certain circumstances, Kapoor does not cite any other cases, and the court knows of none, in which the extradition court simply excluded evidence that the extraditee claimed was the result of torture. Because Kapoor has no corroborating evidence of her

(continued...)

- (Extradition Packet at P297–300.)

- Monika Kapoor is listed as the "name" on bank account opening forms for Monika Overseas dated March 3, 1997. There is also a signature next to her name. (Id. at P76.)

- V.K. Mohan Das, an officer at Karur Vysya Bank Ltd., Foreign Exchange Department, states in a March 12, 2004 affidavit that his bank issued bank certificates of export and realization ("BCRs")[9] in favor of Monika Overseas that are forgeries with respect to his name. Mohan Das also claims to have verified signatures on the BCR, including Kapoor's, by comparing them to bank records.[10] (Id. at P310–11.)

- There is a series of letters on Monika Overseas letterhead that purportedly transmit replenishment licenses to Deep Sea Exports. They all bear the

---

[8](...continued)
purported torture, her request to exclude her 1999 statement essentially amounts to a request to recant her statement. As serious as her accusations of torture are, as explained above, it is inappropriate for this court to consider them. As a result, the court will not exclude her September 1999 statement. Kapoor also argues that, to the extent that the court considers the statement in its determination, it should take notice that parts of the statement "appear to be dictated." (Kapoor Mem. at 8.) She highlights the fact that there are misspellings throughout the document. (Id.)

[9] To obtain replenishment licenses from the Indian government, exporters must submit a BCR to the Indian government's Joint Director of Foreign Trade. (See Extradition Packet at P314–15). BCRs are issued by a bank at the request of an exporter. (See id. at 314.)

[10] Mohan Das does not, however, explain what method he used to verify the signatures. Kapoor urges the court to discount Mohan Das's identification of the signatures because the extradition note is "full of individuals claiming that their signatures had been forged on these documents . . . ." (Kapoor Mem. at 6 (citing Extradition Packet at P303, P306, P310–11, P328, P346–50, P368).)

-10-

signature of "Monika Kapoor." (Id. at P233, P237, P242, P245, P248, P251.)

- Jagan Nath, a foreign trade development officer, states in an affidavit that he prepared the six Monika Overseas Replenishment Licenses and the forwarding letters used to transmit the licenses. According to Nath, they were then sent to Monika Overseas at Kapoor's residential address, although he acknowledges that he relied on another part of his office to send out the letters and licenses. Nath reports that the files on the Replenishment Licenses indicate that Chaman Lal prepared the process notes. (Id. at P314–15.)

- Chaman Lal, an employee of the Directorate General of Foreign Trade, states in an affidavit that he processed fourteen of the sixteen Replenishment Licenses at issue in this case. He also says that once processed, licenses and forwarding letters are placed in a sealed cover and returned to another section of the office to be sent to the exporter. (Id. at P329–330.)

E. Sufficiency of the Evidence

Plaintiff stands accused of three categories of crimes: (1) cheating and dishonestly inducing delivery of property; (2) forgery and use of a forged document; and (3) conspiracy.[11] I

---

[11] In her opposition memorandum, Kapoor implies that she is only charged with criminal conspiracy to commit the substantive offenses. (See Kapoor Mem. at 3.) However, it is clear that she stands accused not only of criminal conspiracy to commit those offenses but also with the substantive offenses themselves. (See Extradition Packet at P70 ("[Kapoor] stands charged
(continued...)

will address whether the Indian government has provided sufficient evidence for a finding of probable cause to believe she committed each category of charges.

### 1. Cheating and Dishonestly Inducing Delivery of Property

Kapoor is first charged with cheating and dishonestly inducing delivery of property, in violation of Indian Penal Code ("IPC") § 420. A person is guilty of this offense if she "cheats"[12] and thereby dishonestly induces the person deceived to deliver any property to any person, or to make, alter or destroy the whole or any part of a valuable security, or anything which is signed or sealed, and which is capable of being converted into a valuable security . . . ." IPC § 420. There is sufficient documentary evidence to support a reasonable belief that Kapoor (acting as the proprietor of Monika Overseas) "cheated" the Indian government by using forged export documents to induce the Indian foreign trade authorities to deliver the Replenishment Licenses to her. Inter alia, there is evidence that she had a role in setting up the business in her name, that she signed the forged BCRs and other documents in the application for the licenses, and that the licenses were mailed to her home address.

### 2. Forgery Offenses

---

[11](...continued) with the offence of the U/s 120-B r/w 420, 467, 468, 471 Indian Penal Code & *Substantive Offenses thereof* . . . ." (emphasis added)); see also Compl. ¶ 4.)

[12] Cheating is defined in IPC § 415:

> Whoever, by deceiving any person, fraudulently or dishonestly induces the person so deceived to deliver any property to any person, or to consent that any person shall retain any property, or intentionally induces the person so deceived to do or omit to do anything which he would not do or omit if he were not so deceived, and which act or omission causes or is likely to cause damage or harm to that person in body, mind, reputation or property, is said to "cheat."

Kapoor is also charged with three different related forgery offenses; all are apparently linked to her purported forgery of documents to obtain and then use the Replenishment Licenses. They are: Forgery of Valuable Security Will, etc. (IPC § 467);[13] Forgery for the Purposes of Cheating (IPC § 468);[14] and Using as Genuine a Forged Instrument (IPC § 471).[15] The evidence linking Kapoor to the forged documents that were submitted to the Indian trade authorities is sufficient to establish probable cause with respect to these charges.

### 3. Conspiracy

Lastly, Kapoor stands accused of criminal conspiracy to commit all of the four

---

[13] IPC § 467 states in pertinent part:

> Whoever forges a document which purports to be a valuable security or a will, . . . or which purports to give authority to any person to make or transfer any valuable security, or to receive the principal, interest or dividends thereon, or to receive or deliver any money, movable property, or valuable security or any document purporting to be an acquittance or receipt acknowledging the payment of money, or in acquittance or receipt for the delivery of any moveable property or valuable security . . . .

A person commits forgery if he

> makes any false document or part of a document with intent to cause damage or injury, to the public or to any person, or to support any claim or title, or to cause any person to part with property, or to enter into any express or implied contract, or with intent to commit fraud or that fraud may be committed . . . .

IPC § 463.

[14] IPC § 468 defines this offense as, "[w]hoever commits forgery, intending that the document forged shall be used for the purpose of cheating . . . ."

[15] "A person commits the offense of using as genuine a forged document if he "fraudulently or dishonestly uses as genuine any document which he knows or has reason to believe to be a forged document . . . ." IPC § 471. A "forged document" is defined as a "false document made wholly or in part by forgery . . . ." IPC § 470. The offense of forgery, IPC § 463, is described above.

aforementioned substantive offenses. IPC § 120B, the statute that is referenced in the warrant for Kapoor's arrest, does not define the offense of criminal conspiracy but rather the punishment for that offense. See IPC § 120B. IPC § 120A defines a criminal conspiracy as "[w]hen two or more persons agree to do, or cause to be done,—(1) an illegal act, or (2) an act which is not illegal by illegal means . . . ."

Kapoor argues that to show probable cause that she was involved in a criminal conspiracy, India would need to provide evidence that she "knowingly and intentionally became a member of a conspiracy whose object was to commit the fraud alleged, and that she knew what the object of that conspiracy was." (Kapoor Mem. at 3.) However, the plain language of IPC § 120A does not require any such mens rea; the statute states that conspiracy is "[w]hen two or more persons agree to do, *or cause to be done*,—an illegal act, . . . ." (emphasis added). In addition to the documentary evidence linking Kapoor to the forged documents used to obtain the Replenishment Licenses, Kapoor's statement provides evidence to support probable cause with respect to this charge. In the statement, Kapoor described several actions that she took at the request of one or both of her brothers, including setting up Monika Overseas and giving her brother signed sheets of Monika Overseas letterhead. (See Extradition Packet at P297 –300.)

In sum, the government's proof meets the limited threshold of probable cause for each of the five charges against Kapoor and is sufficient to support her extradition.[16]

---

[16] In addition to the evidence that the government identified, other documents in the packet help to establish probable cause. Examples are the following:

- Atul Kapoor's (Kapoor's husband) statement to authorities is mentioned in a Directorate of Revenue Intelligence order to show cause notice. He apparently said that Kapoor was proprietrix of Monika Overseas, that Kapoor's brothers managed and financed the activities of the firm, and that Kapoor "signed the

(continued...)

-14-

Nonetheless, it bears noting that Kapoor raises several questions about the reliability of the government's evidence. For example, she highlights the fact that there is no direct evidence that she signed any of the forged documents submitted by Monika Overseas and that there is no explanation in the record regarding Mohan Das's qualifications to identify her signature. (See Kapoor Mem. at 4.) Moreover, both the omission of and the actual substance of the Supplemental Opinion, which the court was not permitted to consider in its probable cause analysis, cast further doubt upon the reliability of the government's evidence. As disconcerting as India's evidence and the omissions from the government's case are, however, they do not overcome the government's showing of probable cause or defeat India's extradition request.

## Conclusion

For the reasons stated above, the government's request for a certificate of extraditability is granted.

SO ORDERED.

Dated: Brooklyn, New York
       April 17, 2012

                                            /s/
                                    ROBERT M. LEVY
                                    United States Magistrate Judge

---

[16](...continued)
       documents pertaining to export and import made in the name of M/s. Monika Overseas on the instructions of her brothers." (Extradition Packet at P266.)
- Suresh Bhai Gadecha of Deep Sea Imports states in a letter that transfer letters covering each license were signed by Rajan Khanna and Kapoor. (Id. at P343.)
- There is a report of the statement of "the late" P.K. Maity, Manager of Foreign Exchange Department, Syndicate Branch in New Delhi, in which he said he verified Kapoor's signature on the cover letter to Deep Sea imports. (Id. at P37.)